[Civ. No. 3440.  Second Appellate District, Division One.—December 8, 1920.]

## FRANK C. HOYT, Respondent, v. BELLE THOMAS et al., Appellants.

[1] SPECIFIC PERFORMANCE—AGREEMENT TO DEVISE PROPERTY BY WILL —BREACH—INADEQUACY OF MONEY PAYMENT.—In an action to enforce an agreement to make a will and devise property in favor of the plaintiff, it must appear in the complaint, either by direct averment or from a description of the character of the services rendered, that a money payment would not furnish adequate compensation to the plaintiff.

[2] ID.—VALUE OF SERVICES—PLEADING—SUFFICIENCY OF COMPLAINT. The fact that the plaintiff in such action has fixed a definite sum as being the value "or thereabouts" of the services rendered will not alone vitiate the statement of a good cause of action for the relief demanded, provided the complaint contains such a description of the services which were performed as to enable a court to say that the value of such services cannot be adequately measured in money terms.

[3] ID.—INSUFFICIENCY OF COMPLAINT—WAIVER OF OBJECTION—PLEADING.—Where the complaint in such action not only fails to disclose services rendered by the plaintiff of such a character as to entitle him to have specifically performed the contract alleged but, by affirmative allegation as to the value of such services, makes it appear with reasonable certainty that he could have secured full redress by money claim against the estate of the deceased, the defendants, by failing to demur and by denying in their answer that services of the value stated or of any value had been rendered, do not waive their right to question the complaint on the general ground that it fails to state sufficient facts to authorize equitable relief to be administered.

[4] APPEAL—ALTERNATIVE METHOD—REVIEW OF EVIDENCE.—On an appeal from a judgment under the alternative method, in order to review the evidence it is not necessary that there has been a motion for a new trial.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Specific performance of contract to make will, note, Ann. Cas. 1914A, 399.

Lloyd W. Moultrie for Appellants.

James S. Bennett for Respondent.

JAMES, J.—Appeal from a judgment awarding to the plaintiff the relief demanded in his complaint.

Defendants are the heirs and distributees of the estate of Hattie McIntire, deceased. Hattie McIntire died intestate in September, 1917, leaving an estate consisting of real and personal property which was appraised at the sum of $4,043.77. The value of the property distributed after settlement of the estate accounts is stated in the briefs to have been the sum of $3,469.12. This plaintiff presented and had allowed in his favor against the property of the estate two claims, one for rugs purchased, $20, and a second for money advanced, $85.30. Immediately upon the order settling the estate being made and distribution being had, plaintiff commenced this action. In his complaint he alleged that in March, 1903, a contract was entered into between plaintiff and Hattie McIntire, widow of William F. McIntire, whereby the said plaintiff promised the said Hattie McIntire that he would attend to her business affairs, particularly her said real estate, and perform such personal services for said Hattie McIntire as she should from time to time request during the remainder of her natural life; that in consideration thereof the said Hattie McIntire promised and agreed that all of the estate of which she died possessed should thereupon be and become the property and estate of the said plaintiff, Frank C. Hoyt; that said Hattie McIntire then and there promised and agreed that she would, prior to her death, execute a last will and testament, or such other papers as should be necessary to carry out the terms of said contract on her part, and to assure the possession of said property to said Frank C. Hoyt; that said Hattie McIntire died on or about the nineteenth day of September, 1917, without having executed said will or other papers, and without having transferred said property or any part thereof to plaintiff. That said agreement was and is just, fair, and equitable in all its terms and conditions, and the consideration moving to the said Hattie McIntire from plaintiff was and is adequate. That said plaintiff fully kept and performed each and every of the terms and agree-

ments on his part to be kept and performed from the making of said contract until the death of said Hattie McIntire; that during all of said time he had charge of her business affairs and the management of her property, and performed all such personal services as the said Hattie McIntire required from time to time, and remained in charge of her said property after her death until he delivered possession of the same to the public administrator. That all of said services so performed by plaintiff for said Hattie McIntire in her lifetime were and are of the reasonable value of $3,500 or thereabouts. The allegations which we have referred to comprise all of the substantial averments of the complaint. The trial judge, under those allegations, made, among others, this finding: ''That certain of the said services so performed by plaintiff for said Hattie McIntire in her lifetime were of a nature and character not to be compensated for by money alone, and that all of said services so performed by plaintiff for said Hattie McIntire in her lifetime, so far as the same can be valued in money, were and are of the reasonable value of thirty-five hundred dollars ($3500) or thereabouts.''

One of the points made is that the judgment cannot be sustained because it is predicated upon a complaint which fails to state facts sufficient to constitute a good cause for the equitable relief demanded and adjudged. The particular point of this objection goes to the question as to the right of a plaintiff in the circumstances alleged to have specific performance if it appears that he might have been adequately compensated in money. It will be noted that nowhere in the complaint is there a statement of what the particular alleged ''personal services,'' which plaintiff asserted that he had rendered to Hattie McIntire, were. He affirmatively alleged that the services as rendered were worth $3500 or thereabouts.'' This allegation follows a general one that the contract was fair and equitable in all its terms and conditions and that the consideration was adequate. [1] As we understand the law, it is settled that in a complaint in an action to enforce an agreement to make a will and devise property in favor of the plaintiff, it must appear, either by direct averment, or from a description of the character of the services rendered, that a money payment would not furnish adequate compensation to the plaintiff. [2]

The fact that the plaintiff has fixed a definite sum as being the value "or thereabouts" of the services rendered would not alone vitiate the statement of a good cause of action for the relief demanded, provided the complaint had contained such a description of the services which were performed as to enable a court to say that the value of such services could not be adequately measured in money terms. We quote from the decision in *Flood* v. *Templeton,* 148 Cal. 374, [83 Pac. 148] : "Equity, it is true, does entertain contracts for specific performance to convey the whole or any portion of the promisor's property by will, but it decrees such performance, first, only upon clear proof of fairness, justness and adequacy, and where the rights of innocent third parties are not imperiled; and second, *it does so only where the plaintiff cannot be compensated in money.* These cases usually arise where the service is of some extraordinary nature which cannot be, and in the contemplation of the parties was never expected to be, paid for in money, as where home ties are broken, and minors go to live with an adult upon his promise that he will stand *in loco parentis* and will to them his property in return for their filial services during his lifetime. . . . So it will be found that in all of the cases in which specific performance of these agreements to leave property by will has been decreed by the courts, there has been present the element of peculiar personal services, fully performed and incapable of compensation in money" (citing authorities). In *Morrison* v. *Land,* 169 Cal. 580, [147 Pac. 259], the supreme court, by the chief justice said: "There is no dissent in the authorities from the proposition that one may make a valid contract with another to devise or bequeath property by his last will in a certain specified way. It is clear that in the event of a breach of such a contract, the party damaged has an action at law for the damage caused by such breach of the promisor, and in some cases this, by reason of the circumstances, may be his only remedy, for a resort to any equitable remedy can be had only where the circumstances are such as to make the case one within the well-settled principles relative to the proper exercise of equitable jurisdiction. Where the party damaged is restricted to his remedy at law for the breach, he must necessarily proceed upon the theory that he is a 'creditor' of the deceased, having a 'claim

against the estate arising upon contract,' within the meaning of those words as used in our probate law, . . ." [3] In our opinion, not only did the complaint in this action fail to disclose services rendered by the plaintiff of such a character as to entitle him to have specifically performed the contract alleged, but the effect of the affirmative allegation as to the value of such services makes it appear with reasonable certainty that plaintiff could have secured full redress by money claim against the estate of Hattie McIntire. Respondent admits that the general objection now made to the complaint was not waived by failing to demur (Code Civ. Proc., sec. 434), but does assert that because the defendants made denial of the allegation as to the value of the services, they are estopped from questioning the sufficiency of the complaint in the regard mentioned. We do not think that the conclusion by any means follows. The defendants by their answer denied that services of the value stated or any value had been rendered, and by this denial assuredly they did not waive their right to question the complaint on the general ground that it failed to state sufficient facts to authorize equitable relief to be administered. The trial court evidently realized that it was necessary, in order to support the judgment, to make a finding that services had been performed which could not be valued in money, when it determined facts as we have shown in the finding quoted. The finding, however, lacks necessary support in the allegations of the complaint; and it appears to us also that, as appellants insist, it fails to find sufficient support in the evidence. Plaintiff testified that prior to the making of the agreement with Mrs. McIntire he had helped her around the house, mowed lawns, "and different things like that, little things, and I had been working in a grocery-store and delivered groceries there; and there was a rubber elbow on the toilet that got a hole in it, broken, and I went to a hardware store and got another rubber elbow and put it on the toilet at that time. And she says, 'Frank, I haven't any people of my own, and you have been good to me, and if you will take care of things for me so long as I live, then whatever is left at the time of my death I will give to you.' I told her that I would do that, whatever she required me to do, take care of her, and do things for her." The testimony further of the plaintiff

was that he took up the study of the law at a school shortly thereafter; that he visited Mrs. McIntire on an average of probably two or three times a week, doing things about the house, cleaning the yard, fixing the fences, and some housework and washing; that that went on for a year or two, and then he looked after the making of certain contracts for her, made mortgage loans, and generally transacted her business as her representative; that about the year 1914, Mrs. McIntire became ill, and that he took medicines out to the suburban town where she was staying a number of times; that finally she became quite ill in 1917, and that he stayed at her house "quite a bit" nights, doing housework at times, and washing. He testified: "I went out nights after I would get through my work and stay overnight; and the neighbors helped her some. And then about a week or two before she went to the hospital she hired a woman, who stayed there with her. . . . So I persuaded her, on the advice of her doctor, that she had better go to the hospital and rest up until her foot got in condition so she could get around. . . . Upon my advice she decided to go to the hospital. . . . I told her it would be difficult for me to see her very often out there [Glendale]; that if she wanted to see me, that I knew of a place in Hollywood that was a private hospital, a small hospital that she could go to and get very good care, and that seemed to please her and she decided to go there. And I took my machine and went and took her to that hospital in Hollywood. . . . I visited her there practically every day, and got whatever she needed in town, took it out to her and got things she wanted, alcohol for rubs and nightgowns and an air cushion; numerous things that I could not name definitely. It was paid for by her money. I never paid for anything for her out of my own pocket. She always paid me the money to get things for her, but she never paid me anything for any services rendered of any kind; that is, for whatever work I did, or carfare, or for traveling expenses, or anything like that. I took her out a great many times in an automobile the last three or four years; I took her a great many trips around the country. She never paid any expenses on account of anything like that, and she never paid anything of that sort, but so far as the things she used herself or that I bought for her, she always paid for them. . . . Q.

Now, Mr. Hoyt, what, in your opinion, was the value of the services you rendered to Mrs. McIntire from March, 1903, to the time of her death? A. Well, I would place the value of them at about $4,000.'' There was other testimony of a corroborative nature, consisting of alleged statements made by Mrs. McIntire to nurses and others, confirming the fact as to her having made the agreement alleged with plaintiff; and further as to the fact that plaintiff had been ''more than a son'' to her, and that deceased had said, ''I will pay him well; anything left, it is for him when I am gone.'' Had this testimony stood alone, relating to the character of the services rendered, it perhaps might be proper to hold that the question as to whether the services were capable of being compensated for in money was one for the trial court. However, the plaintiff himself seems to have had it in his mind that the services had a particular and definite money value, for he testified, without apparent hesitation and without qualification, so far as the record shows, that in his opinion the services were worth, as stated, about $4,000. And so we think that the second point made by appellants, to wit, that the particular finding of the court herein referred to is not supported by the evidence, is well taken.

[4] Respondent's counsel insists that it is improper to review the evidence on an appeal from the judgment where it is not shown that there has been a motion for a new trial. Even under the established code practice, and before the inventive brain of some practitioner, ever seeking an easier way to practice law, had evolved the so-called alternative method, the statute permitted the review of evidence upon an appeal from a judgment where the appeal was taken within sixty days and the evidence was presented in a bill of exceptions. (Sec. 956, Code Civ. Proc., before amendment of 1915 (Stats. 1915, p. 328); *Perkins* v. *Cooper et al.*, 3 Cal. Unrep. 279, [24 Pac. 377].) The case cited was given a hearing in Bank and later the decision made on another point, but its argument has not been discountenanced by any later expression of the supreme court. Under the alternative method, the reporter's transcript, prepared according to the requirements of section 953a of the Code of Civil Procedure, serves all the purposes of a bill of exceptions, it being necessary, however, that the parties

print in their briefs such portions of the records as they desire to call to the attention of the court.

For the reasons given, the judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 3, 1921.

All the Justices concurred.