[Civ. No. 3331. Second Appellate District, Division One.—December 8, 1920.]

## L. B. HACKLEMAN, Respondent, v. C. A. LYMAN, Appellant.

[1] VENDOR AND VENDEE—FRAUDULENT REPRESENTATIONS — RELIANCE ON BY VENDEE.—Conceding that the vendor did make representations that the land sold had had water on it and that a given number of acres thereof was irrigable and could be put into crops immediately after suitable ditches had been constructed and the land bordered, all of which at the time he knew to be false and untrue, nevertheless legal fraud could not be predicated thereon unless the vendee, believing the same to be true, relied thereon and was thereby induced to purchase the property.

[2] ID.—PERSONAL INVESTIGATION BY VENDEE — PRESUMPTION. — If a purchaser of real estate visits the property prior to the sale and makes a personal examination of it touching representations made as to its quality, character, or condition, he will be presumed to rely, not upon the representations, but upon his own judgment in making the purchase, provided the vendor does nothing to prevent his investigation being as full as he chooses.

[3] ID.—INDEPENDENT INVESTIGATION—PURCHASE ON ADVICE OF EXPERT—ESTOPPEL TO CLAIM DECEIT.—Where the vendee does not rely upon the representations made by the vendor, but, without any interference on the part of the vendor, makes an independent investigation, and, after obtaining the opinion and advice from the expert whose services he seeks, he purchases the land, he cannot be heard to claim that he was deceived by the false representations made by the vendor.

[4] APPEAL — ALTERNATIVE METHOD — SUFFICIENCY OF EVIDENCE TO SUPPORT DECISION.—Under the alternative method of appeal, it is not necessary, in order to entitle the appellant to a review of the sufficiency of the evidence to support the decision, that he first present to the trial court a motion for a new trial.

APPEAL from a judgment of the Superior Court of San Diego County. E. A. Luce, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Necessity for reliance on false representations in order to maintain action for deceit, note, Ann. Cas. 1915B, 779.

Lewis S. Riley and Chas. B. DeLong for Appellant.

E. R. Simon for Respondent.

SHAW, J.—Action to recover damages for alleged fraudulent representations made by defendant to plaintiff, as a result of which the latter, in reliance thereon, was induced to purchase certain land.

Judgment was rendered in favor of plaintiff for $450 and costs, from which the defendant has appealed.

It appears that defendant was the owner of forty acres of unimproved land situated in Imperial Valley. The land was rough, and had never been ditched, leveled, bordered, or otherwise prepared for irrigation, without which it could not be cropped or cultivated. Negotiations were entered into between plaintiff and defendant which culminated in a purchase of the tract of land by plaintiff. As alleged in the complaint, the court found that for the purpose of inducing plaintiff to purchase the land, defendant during the negotiations, and "on or about the fifteenth day of May, 1916, and at various other times between that date and the twenty-eighth day of June, 1916, represented and stated to the plaintiff that the above-described land had had water over it and that about twenty-five acres of said land was irrigable and could be put into a crop immediately after suitable ditches had been constructed and the land bordered." "That all of said entire tract of land, excepting 12.2 acres, lies too high and at too great an elevation to be irrigated. That at the times said representations as aforesaid were made, the ditches of the Imperial Eastside Water Company, a water company furnishing water for irrigation in the neighborhood of said land, ran to and adjacent to said tract of land; that all of said land, excepting 12.2 acres, lies above and is higher than the ditches of said water company, and it is impossible to bring water upon any portion of the twenty-five acres referred to by the defendant, excepting 12.2 acres thereof"; followed by findings to the effect that at the time defendant made said representations he knew the same to be false and untrue and made them for the purpose and with the intent that plaintiff should rely thereon, and that plaintiff did believe said representations and relied upon the same, as a result of which he made the purchase.

The sole contention of appellant is that these findings are not supported by the evidence.

[1] Conceding that defendant did make the representations that the land had had water on it and that twenty-five acres thereof was irrigable and could be put into crop immediately after suitable ditches had been constructed and the land bordered, all of which at the time he knew to be false and untrue, nevertheless legal fraud could not be predicated thereon unless it should be made to appear further that plaintiff, believing the same to be true, relied thereon and was thereby induced to purchase the property. (*Maxon-Nowlin Co.* v. *Norswing,* 166 Cal. 509, [137 Pac. 240].) Indeed, as to such facts the court found in favor of plaintiff; but, in our opinion, such finding, while necessary and material in support of the judgment, is not warranted by the evidence.

Disregarding all evidence offered on behalf of defendant, it appears from the testimony of plaintiff that after the making of the alleged misrepresentations he secured the services of William Orrick, who had had experience in leveling land and preparing it for irrigation, and with him went upon the land, where they spent two or three hours inspecting the same, at which time plaintiff consulted Orrick as to the cost of leveling "and whether or not the land would be irrigable." Orrick testified that, "with a view of ascertaining whether or not the land could be irrigated," he and plaintiff walked all over it, after which they discussed the question as to whether the land could be irrigated and came to the conclusion that about twenty-five acres, when leveled, could be irrigated. It was apparent from the physical appearance of the land that it had not been cropped or irrigated. While inspecting the land, Orrick stated to defendant: "This land looks a little high to me; are you sure that it will irrigate?" to which defendant replied, "Yes." Orrick further states that he made a rough report to plaintiff and stated to him, "the land would have to be surveyed before it could be determined . . . which way the water would run"; that it did not look to him as though the water would run over the land from the service ditch designated by defendant; that the land looked higher than the ditch and, in the presence of the plaintiff, he said: "I made the statement I didn't think water would run from

the ditch on the land.'' ''I made the remark, 'It don't look to me like the water would run out of that ditch on to the land.' '' But further said: ''When you get a surveyor and survey it, it might be different.'' Without such survey, Orrick said no man could tell positively whether the land could be irrigated. It further appeared that prior to the purchase plaintiff had resided in the valley more than ten years, during four years of which time he had been engaged in farming operations there and was familiar with the conditions which required land to be leveled, ditched, and bordered as a means of cultivating the same, and that water for such purpose was obtained by gravity through delivery ditches from the water company which assumed the duty of supplying lands with water. No statement was made by defendant that he had surveyed the land, without which, according to Orrick, no man could say just what part thereof could be irrigated. Hence, plaintiff having equal means of knowledge, and in the absence of any obstacle interposed by defendant to a full investigation of the matter, must be deemed to have known that defendant was in no better position to judge of the question than was Orrick or himself. It thus appears that, instead of relying upon the representations made by defendant, he, with the aid of Orrick, whom he had employed by reason of his experience in such matters and fitness for the service, made an independent examination, upon which he must be presumed to have acted, rather than upon the representations made by defendant. [2] If a purchaser of real estate visits the property prior to the sale and makes a personal examination of it touching representations made as to its quality, character, or condition, he will be presumed to rely, not upon the representations, but upon his own judgment in making the purchase, provided the vendor does nothing to prevent his investigation being as full as he chooses. (*Southern Development Co.* v. *Silva,* 125 U. S. 257, [31 L. Ed. 678, 8 Sup. Ct. Rep. 881]; *Farrar* v. *Churchill,* 135 U. S. 609, [34 L. Ed. 246, 10 Sup. Ct. Rep. 771, see, also, Rose's U. S. Notes]; *Wainscott* v. *Occidental etc. Assn.,* 98 Cal. 253, [33 Pac. 88].) In *Colton* v. *Stanford,* 82 Cal. 398, [16 Am. St. Rep. 137, 23 Pac. 28], the court says: ''The power to cancel a contract is a most extraordinary power. It is one which should be exercised with great

caution,—nay, I may say, with great reluctance,—unless in a clear case. A too free use of this power would render all business uncertain, and, as has been said, make the length of a chancellor's foot the measure of individual rights. The greatest liberty of making contracts is essential to the business interests of the country. In general, the parties must look out for themselves." It conclusively appears herein that plaintiff was unwilling to accept as true the representations made by defendant as to the questions involved, and thereupon sought the services of Orrick to make an independent investigation and advise him as to the questions involved. In our opinion, the case comes squarely within the rule announced by Pomeroy in his work on Equity Jurisprudence, third edition, section 893, which is as follows: "If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." And again, in section 894, the same author says: "If, in a contract of sale . . . , representations are made by the vendor concerning some . . . qualities or attributes of the subject matter which are open and visible, so that the falsity of the statement is patent to an ordinary observer, and it is made to appear that the purchaser, at or shortly before the concluding of the contract, had seen the thing itself which constitutes the subject matter, then a knowledge of the facts is chargeable upon such party; he is assumed to have made the agreement knowingly, and cannot allege that he was misled by the false representations." In *Attwood* v. *Small*, 6 Clarke & F. 232, it was

said: "If a purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his advisors he cannot be heard to say he was deceived by the vendor's misrepresentations."

[3] In our opinion, the testimony of plaintiff and that offered on his behalf brings the case squarely within the rules announced by the foregoing authorities. As shown by the evidence, plaintiff did not rely upon the representations made by defendant, but, without any interference on the part of defendant, made an independent investigation, and, after obtaining the opinion and advice from the expert whose services he sought, he purchased the land, and hence should not now be heard to claim that he was deceived by the false representations made by defendant.

[4] The appeal was taken within sixty days from the rendition of judgment and, in lieu of a bill of exceptions, the record is presented by a typewritten transcript of the phonographic notes, as provided by section 953a of the Code of Civil Procedure. No motion for a new trial was made in the court below, and because of this fact, respondent insists that plaintiff is not entitled to a review of the question touching the sufficiency of the evidence to support the findings. Such appears to have been the rule under the practice prior to the adoption of the code, as decided in *Reed* v. *Bernal*, 40 Cal. 628. Under section 939 of the Code of Civil Procedure, an appeal may be taken from any judgment within sixty days from the entry of said judgment, and, as provided by section 956 of the Code of Civil Procedure, the court upon the taking of such an appeal from the judgment may review the verdict or decision. The findings of the court as to ultimate facts constitute the decision, and, under section 647 of the Code of Civil Procedure, are deemed to have been excepted to. Under the alternative method of appeal, no bill of exceptions is necessary. Neither is it necessary, in order to entitle an appellant to a review of the sufficiency of evidence to support the decision, that he first present to the trial court a motion for a new trial. The contention is without merit. (*Hoyt* v. *Thomas, post,* p. 329, [195 Pac. 260].)

The judgment is reversed.

Conrey, P. J., and James, J., concurred.