[Civ. No. 4673. Second Appellate District, Division Two.—November 2, 1927.]

STANDARD BOND AND MORTGAGE COMPANY (a Corporation), Appellant, v. WILLIAM T. BOYD et al., Respondents.

C. E. McDowell for Appellant.

Ray Meacham for Respondents.

PEAIRS, J., *pro tem.*—This is an appeal on the part of the plaintiff, Standard Bond and Mortgage Company, from a judgment in favor of the defendants, William T. Boyd and Carrie M. Boyd, his wife, in an action arising out of an attempted rescission of an agreement of exchange between the said parties of property in Long Beach, California, originally owned by the plaintiff, for a quarter-section of land in Waterloo township, Jackson County, Michigan, formerly belonging to the defendants.

It appears from the evidence that on or about the tenth day of October, 1920, one Jackson and his wife sold to one Grames and wife a certain 160-acre farm in Waterloo township, Jackson County, Michigan, for $9,500, payable $3,211.09 at date of agreement, $200 on or before December 1, 1921, $500 each year thereafter until paid, with interest at six per cent; that there was an encumbrance of $2,500, which was assumed by the purchaser; that this contract was assigned by the Jacksons to William T. Boyd, one of the defendants; that about February 1, 1921, the defendants, in response to an advertisement for exchange of local property for eastern property, went to the office of Hargrave & Whiteley, agents for the Standard Bond and Mortgage Company; that the defendants, through Mrs. Boyd, stated that they wished to exchange an equity in Michigan

property for Long Beach property and stated the terms of their contract, describing the property as rolling, tillable, and mostly under cultivation in potatoes or corn or small grain; that it had the necessary buildings upon it, and that a man lived upon the property and made his living; that the property was worth about $9,500; and that after looking at various properties at Long Beach the defendants agreed to exchange their equity for a property in Long Beach owned by the plaintiff, the property of the plaintiff being valued at $6,500, with a mortgage thereon for $2,500, the defendants to give a second mortgage for $200 for the difference in equities, and on the said first day of February, William T. Boyd gave a note to Hargrave & Whiteley for $200, which reads as follows:

"200.00.                    "Long Beach, Cal., 2–1–21.

"Thirty days after date without grace, we promise to pay to the order of Hargrave & Whiteley two hundred and no/100 dollars for value received, with interest from date at the rate of 8% per annum until paid. Principal and interest payable in United States gold coin at Nat. Bk. Long Beach, and in case suit is instituted to collect this note or any portion thereof, we promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit."

In explanation of the lack of signature on this note defendant Boyd made the following statement: "I tore the signature off so it couldn't be used when I subsequently paid the note." That defendant's offer above referred to was refused by the plaintiff, but plaintiff offered to take the contract from defendants as collateral, which offer the defendants refused; that after meetings and discussions between Mr. Hargrave and Captain Spicer, secretary and manager for the plaintiff, a letter was sent by Hargrave & Whiteley on February 16, 1921, to the plaintiff, which reads as follows:

"Standard Bond and Mortgage Company,
    "H. W. Hellman Building,
        "Los Angeles, California.
    "Gentlemen: I talked to Mr. Boyd today in regard to the sale of 2374 Pasadena Avenue. He is willing to assign

contract on his farm back east for $3800.00 and to make it safer will agree to give us a second mortgage or trust deed on place payable at the rate of $20.00 per month, six per cent interest, and every payment he makes will be credited on contract which he is turning in, until the amount of $500.00 has been paid and that amount will be credited to him on the $3800.00 contract he is turning in. He says this property will easily bring $9,000.00 on a forced sale. If the $3800.00 contract is not paid out, he is to guarantee the $3800.00 or lose the $500.00. Will you kindly send us deed to him as per escrow instructions, also second mortgage or trust deed or second mortgage payable at the rate of $20.00 per month and interest.

"Yours truly,
"HARGRAVE & WHITELEY,
"By B. P. H."

The transcript further shows that on March 7, 1921, the following letter was sent to plaintiff by Hargrave & Whiteley:

"March 7, 1921.
"Standard Bond and Mortgage Company,
"H. W. Hellman Building,
"Los Angeles, California.

"Gentlemen: We are enclosing herewith grant deed from W. E. Boyd and wife to you on the S. E. Quarter Section 5, Township 2, So. of Range 2, east, Jackson county, Mich. Also we are enclosing herewith deed of trust to you on 2374 Pasadena Ave. of this city. We are also enclosing Boyd's papers on the property in Michigan. Will you kindly send us statement of amounts due you from Boyd such as cost of search of title on his property in Jackson, Mich., etc. Will you also kindly write the W. B. Webb Co., Webb Block, Jackson, Michigan, and they will give you much valuable information on property back there, and they are the people that can discount the contract.

"Yours very truly,
"HARGRAVE & WHITELEY.
"By B. P. H."

Letter was sent by W. B. Webb Co., which reads in part as follows:

"March 30, 1921.

"Standard Bond & Mortgage Co.,
  "801 H. W. Hellman Building,
    "Los Angeles, Cal.

"Gentlemen: Your letter of March 10, in regard to the George Jackson and Edna L. Jackson property in Waterloo township received. On taking the deed to the Court House, we find that they cannot record it because there are taxes in the amount of $149.97 that must be paid before the deed can be recorded. There is interest due on the $500.00 mortgage, due in 1920, which is $17.50 and there will be due April 14, interest on the $2000.00 mortgage, which is $60.00. Will you kindly make two checks, one payable to the County Treasurer for $149.97, and another to the Register of Deeds for $.90 for recording the deed. Will you please give me the amount of the contract between Geo. Jackson and Ralph Grames and wife, and the terms. The title of the property is good and I am taking the insurance policy to the agent to protect your interest as they may appear. We are enclosing the old policy, which has expired and are having it renewed, this just covers the buildings, no personal property. You will kindly mail us a check for $2.70 payable to the Farmers Mutual Insurance Co. Attorneys fees will be $10.00.

"Very truly yours,
"W. B. WEBB COMPANY,
"CORY J. SPENCER,
"Sec'y & Treas."

The pleadings and evidence further show that there was a slight alteration of the suggested contract in the letter of February 16th, mentioned above, so that instead of a note for $500 under the second mortgage to the plaintiff, the defendants signed a note for $489.42 on March 3, 1921, showing that a very careful calculation had been entered into at the time of the agreement of exchange.

The letter of March 30, 1921, shows that the plaintiff had written to W. B. Webb Co. on March 10, 1921, concerning the recordation of the Boyd deed and other matters, and were thus in communication with one of the sources of information given them by the defendants, and that the plaintiff knew at that time that its deed had been delivered to the defendants. In response to the letter from W. B.

Webb Co., who were incidentally holders of the first mortgage on the Waterloo property, plaintiff sent money to pay back taxes, interest, and recorder's fees. Further, the letter of February 16, 1921, in that regard says that: "If the $3800.00 contract is not paid out, he, Boyd, is to guarantee the $3800.00 or lose the $500.00 . . . " According to the pleadings, at the time the action was brought defendants had paid $430 on the second mortgage or trust deed given plaintiff. From March 30, 1921, to January 30, 1922, various letters were apparently sent to Webb & Co. in Michigan. On February 13, 1922, the following telegram was received by plaintiff from E. L. Doer:

"Jackson, Mich., 1922, Feb. 13, P. M. 12.
"Standard Bond and Mortgage Company,
    "Los Angeles, California.

"Grames still on farm crops failure practically no fences buildings poor land in poor condition soil light or low and wet farm on state road thirty dollars per acre full valuation.

"E. L. DOER,
"Appraiser, Jackson City Bank."

The plaintiffs claim misrepresentation and fraud on the part of defendants as grounds for rescission. Notice of rescission, it is alleged was served on or about February 9, 1922, which was nearly one year after contract was entered into on March 3, 1921.

The law governing cases of this class is probably best shown by quoting from various decisions in this state, and elsewhere, and as stated in a citation from the case of *French* v. *Freeman*, 191 Cal. 589 [217 Pac. 515], "Section 1691 of the Civil Code requires the party entitled to rescind 'to rescind promptly, upon discovering the facts which entitle him to rescind.' Whether or not the defrauded party has rescinded 'promptly' will depend upon all the circumstances of the particular case, and is, of course, a question primarily for the trial court." In *Hackleman* v. *Lyman*, 50 Cal. App. 326 [195 Pac. 263], it is also said: " 'If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns' the real facts, he

cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled.' . . . 'If a purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his advisors he cannot be heard to say he was deceived by the vendor's misrepresentations.' '' In the case of *Wyrick* v. *Campbell*, 67 Okl. 240 [170 Pac. 267], it is said: '' 'Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations.' . . . The law does not deny its aid in such cases because it looks upon a want of candor and sincerity with indulgence, but because it will not encourage that indolence and inattention which are no less pernicious to the interest of society, and will not relieve those who suffer damage by reason of their own negligence or folly.''

From the evidence quoted above, and in the light of the law cited, it is unnecessary to consider other contentions of the case as it appears, as stated in finding No. 3 of the trial court: ''That said plaintiff instituted and conducted an independent investigation as to the value of said contract of purchase and sale and the possibilities of converting the same into cash, had recourse to the proper means of obtaining such information, and that neither said defendants or either of them did any act or caused any act to be done to prevent or hinder said investigation of plaintiff or to prevent said investigation of plaintiff from being as full as plaintiff chose to make it,'' and further, that for the same reason specifications of insufficiency of evidence to warrant portions of finding V of the trial court are im-

material, and that plaintiff having made an independent investigation cannot complain of its own lack of diligence.

There being a material conflict in the evidence in addition to those portions discussed above, the judgment of the trial court will not be disturbed.

Judgment affirmed.

Works, P. J., and Thompson, J., concurred.